## COUNTY OF NOBLES *vs.* SIOUX CITY & ST. PAUL RAILROAD COMPANY.

### December 5, 1879.

**Exemption of Defendant's Land from Taxation.**—The St. Paul & Sioux City Railroad Company (formerly the Minnesota Valley Railroad Company) held the franchises and land grant, under the act of congress of March 3, 1857, pertaining to the line of the Southern Minnesota Railroad Company "from St. Paul, and from St. Anthony *via* Minneapolis, to a convenient point of junction west of the Mississippi, and thence to the southern boundary of the state, in the direction of the mouth of the Big Sioux River;" and the lands within the land grant were to be "exempt from all taxation, until the same shall have been sold and conveyed by said company." Under authority of Sp. Laws 1869, *c.* 50, the company transferred to the Sioux City & St. Paul Railroad Company an unconstructed portion of its line, and the land grant pertaining thereto, within the six-mile limits—the latter company agreeing to construct and equip such portion of the line. *Held,* such transfer was not a sale and conveyance, within the meaning of the act (of May 22, 1857) exempting the lands from taxation.

Proceeding in the district court for Nobles county, for the collection of taxes for the year 1876, assessed on certain lands of defendant in that county. The defendant interposed an answer, alleging that the lands were not subject to taxation. It appearing that the defendant had paid into the state treasury the per centum of its gross earnings required by the legislation stated in the opinion, the court, *Dickinson,* J., presiding, held that the lands were exempt from taxation, and ordered judgment discharging them from the taxes in question; and thereafter, at the request of the county attorney, reported the case to this court, pursuant to Laws 1878, *c.* 1, § 80. (Gen. St. 1878, *c.* 11, § 80.)

*Geo. P. Wilson,* Attorney General, and *Daniel Rohrer,* for plaintiff.

*E. C. Palmer,* for defendant.

GILFILLAN, C. J.    The act of May 22, 1857, of the legislative assembly of the territory of Minnesota, authorized the

Root River Valley & Southern Minnesota Railroad Company (afterwards the Southern Minnesota Railroad Company) to construct two lines of railroad, both described in the land-grant act of congress, of March 3, 1857,—one of them being that from St. Paul, and from St. Anthony *via* Minneapolis, to a convenient point of junction west of the Mississippi, and thence to the southern boundary of the state, in the direction of the mouth of the Big Sioux river,—and disposed of. and conferred to and upon said company all the lands, interests, rights, powers and privileges granted to and conferred upon the territory by said act of congress, applicable to said lines or roads. The act declared that the lands so granted "shall be and are exempt from all taxation until the same shall have been sold and conveyed" by said company, and, in lieu of taxes thereon, provided for the payment by the company, to the territory or state, of three per cent. of the gross earn-ings of the road. Laws 1857, (Ex. Sess.) *c.* 1, subch. 3, §§ 2, 3, 9.

Chapter 2 of the act of March 4, 1864, (Sp. Laws 1864, *c.* 1, subch. 2, § 1,) vested in the Minnesota Valley Railroad Company (now the St. Paul & Sioux City Railroad Company) all the rights, benefits, privileges, property, franchises and interests of the Southern Minnesota Railroad Company, ac-quired by the state "by virtue of any acts, deeds, sale, fore-closure, agreement or thing by the said company hereinbefore done or suffered, or by reason of any forfeiture, or by virtue of any law of the state, or any foreclosure by the governor of the state, acting for and in behalf of the state, or by reason of a sale of the same or any part thereof by the governor of the state of Minnesota, and bid in and purchased by the governor of the state of Minnesota, for the benefit of the state of Minnesota, pertaining to the line of road" hereinbefore described.

The particular "acts, deeds, sale, foreclosure," etc., referred to in the act of 1864, are not set forth in the statement of facts by the court below, upon which the case is certified to

this court; but we must assume that they were the same as are provided for in the amendment of 1858 to section 10, art. 9 of the constitution, and the subsequent acts of the legislature, designed to make effectual the provisions of that amendment. The act of 1864 passed to the Minnesota Valley Railroad Company all the rights vested by the acts of May 22, 1857, in the Root River Valley & Southern Minnesota Railroad Company, in the lands granted by act of congress of March 3, 1857, applicable to the line hereinbefore described, including the exemption from taxation created by said act of May 22, 1857. *First Div. St. Paul & Pacific R. Co.* v. *Parcher*, 14 Minn. 297.

However, the exemption of the lands from taxation while in the hands of the Minnesota Valley—now the St. Paul & Sioux City—Railroad Company, is not questioned in this case. It is only claimed that they lost the exemption by the arrangement made by the St. Paul & Sioux City Company with the Sioux City & St. Paul Railroad Company, under Sp. Laws 1869, *c.* 50, and we have referred to the various acts hereinbefore mentioned, merely to show the origin and character of the exemption, and to ascertain the purpose of the legislature in creating it.

Sp. Laws 1869, *c.* 50, enacted "that the Minnesota Valley Railroad Company is hereby authorized to consolidate with the Sioux City & St. Paul Railroad Company of Iowa, so as to form a continuous line and company from St. Paul and Sioux City; or said companies may, for convenience of operation, form two divisions, or be operated under distinct organizations; and for the purpose of convenient division, so much of the line and land grant of the Minnesota Valley Company, in the south-west part of Minnesota, as the directors of said company may think proper, may be by them transferred to the Sioux City & St. Paul Company, and said part of the road may be built, maintained, owned and operated by the last-named company, under its corporate organization; and stock may be issued thereon by said company, in the same

manner and to the same extent as authorized by the laws of the state of Iowa or of the state of Minnesota: *provided,* that so much of said road as lies in the state of Minnesota shall, in all other respects, be subject to, and be entitled to the benefit of, and governed by, the laws of the state of Minnesota, as fully as if the same were part and parcel of the Minnesota Valley railroad."

Pursuant to the authority given by this act, the two companies, in March, 1871, made an agreement by which the St. Paul & Sioux City Company transferred to the Sioux City & St. Paul Company all its right, title and franchises pertaining to so much of its line of road as then remained to be constructed, from the end of its then constructed road at St. James, in the county of Watonwan, to the Iowa state line—a distance of 74 miles, more or less; and also transferred to the Sioux City Company all its rights and interests in and to all lands granted by congress to aid in constructing its road, lying within the original six-mile limits of the grant, from a point 20 miles west from the west side of range 31—being all the lands in place westerly from that point. The Sioux City & St. Paul Company agreed to construct and equip for business about 45 miles of the line in 1871, and the remainder to the Iowa state line in 1872, and also to fully complete and equip the entire line of the Sioux City & St. Paul Company, from the Minnesota state line to a junction with the Iowa Falls & Sioux City Road, by the end of 1872; and the companies agreed to connect their lines at St. James, and run the same so as to form a continuous line from St. Paul to Sioux City. It is claimed on the part of the county that this transfer was a sale and conveyance of the lands, within the meaning of the act of May 22, 1857, so as to extinguish the exemption.

The general purpose of that act, as also of the act of March 4, 1864, was to secure the construction of the road with the lands granted by the act of congress for that purpose. It was contemplated that the road, if constructed at all, would

from necessity be constructed mainly, and perhaps for a time maintained, from the proceeds of sales of the lands; that the lands would not produce any revenue except from sales; that it might be a considerable time before they could be sold, and that if in the meantime they should, by being subject to assessment and taxation, be a source of expense to any company holding them, the company to which the lands were offered would be less likely to accept the grant, and undertake the construction of the road. As an inducement to the company to enter upon the enterprise, the exemption from taxation was created.

All the acts of the legislature, from first to last, show it was intended that this exemption should exist in favor of any company which, in consideration of the land grant, should assume the construction and maintenance of the line to which it was applicable. It is so expressed in the act of May 22, 1857, in respect to the Root River Valley & Southern Minnesota Company, and in the act of March 4, 1864, in respect to the Minnesota Valley Company; and in the act of 1869 the authority given to the latter company to transfer to the Sioux City & St. Paul Company, not the lands merely, but "so much of the line and *land grant*," implies that the company so authorized might pass to the other all the benefits, together with the burdens, of the grant of land made by the state.

Although the act making the grant operated as a grant *in praesenti*, so far as vesting the nominal legal title, it did not pass an absolute, unconditional title. The title was liable to be defeated by the failure of the company to comply with the conditions annexed to the grant. The absolute, unconditional title was to be earned by construction of road. The grant to the company mentioned in the act of 1857, and the transfer of that grant, by the act of 1864, to the Minnesota Valley Company, vested, it is true, the naked legal title; but the substantial right vested was the right to earn the lands by construction of road. This is what the agreement under the

act of 1869 passed to the Sioux City & St. Paul Company; that is, the right to construct and maintain the part of the line west of St. James, and to earn the lands applicable to that part of the line. That act authorized this to be done, and there can be no doubt the legislature intended that the Minnesota Valley Company, if it should transfer to the other a part of its line and land grant, might transfer just what itself held, subject to the same conditions, liabilities, privileges and exemptions, and that, when transferred, the part of the line and land grant should be held by such other company just as it was held by the company transferring.

The lands are not subject to taxation, and the decision of the court below was correct.