STATE OF MINNESOTA *vs.* NORTHERN PACIFIC RAILROAD COMPANY.

July 18, 1884.

**Railways—Percentage of Gross Earnings in lieu of Taxes—Contract and Lease construed.**—Contract between the defendant and the St. Paul, Minneapolis & Manitoba Railway Company construed, and *held* to vest in defendant an interest in the line of railroad of the latter from St. Paul to St. Cloud, that gave the defendant the right to operate the same to the extent of running its trains over it, which interest was subject to the liability, to pay to the state the 3 per centum on gross earnings stipulated for in Laws 1857, Ex. Sess. *c.* 1, *subc.* 1, § 18. Sp. Laws 1870, *c.* 65, § 1, does not have the effect to exempt such interest from taxation, so as to relieve defendant from liability to pay such 3 per centum on the gross earnings received by it in operating that line.

This action was brought in the district court for Ramsey county, to recover three per cent. of defendant's gross earnings, during the year 1881, derived from its operation of the line of railroad between St. Paul and St. Cloud, owned by the St. Paul, Minneapolis & Manitoba Railway Co., and over which the defendant ran its trains by virtue of the contract between the companies stated in the opinion. The defendant, in its answer, denied that it had any possession or control of the line, and relied on Sp. Laws 1870, *c.* 65, also stated in the opinion. The action was tried by *Brill,* J., who ordered judgment for plaintiff; a new trial was refused, and the defendant appealed.

*W. P. Clough,* for appellant.

*W. J. Hahn,* Attorney General, for the State.

GILFILLAN, C. J.[1] The charter of the former Minnesota & Pacific Railroad Company provided that, in consideration of the grants, privileges, and franchises therein conferred on the company, "the said company shall and will, on or before the first day of March in each year, pay into the treasury of the territory or future state three per centum of the gross earnings of the said railroad for the year ending on the last day of the preceding December, in lieu of all taxes and

[1] Dickinson, J., because of illness, took no part in this decision.

assessments whatever," and that to secure the same "the state shall have a lien upon the railroads of the said company, and upon all other property, estate, and effects of the said company, whether real, personal, or mixed;" and that, in consideration of such payments, "the said company shall be forever exempt from all assessments and taxes whatever by the territory, or state which shall succeed the territory, or by any county, city, town, village, or other municipal authority in the territory or state, upon all stock in the said Minnesota & Pacific Railroad Company, whether belonging to said company or to individuals, and upon all its franchises or estate, real, personal, or mixed, held by said company." Laws 1857, Ex. Sess. *c*. 1, *subc*. 1, § 18.

In *State* v. *St. Paul, M. & M. Ry. Co.*, 30 Minn. 311, the term "gross earnings," in the foregoing quotation, was held to include, not rents received for the right to operate the railroads, but only sums earned by operation, and that leasing or selling the railroad cannot affect the rights of the state; and into whosesoever hands it may pass, and whoever may receive the gross earnings, the obligation to pay, and the right of the state to receive, the three per centum on such gross earnings are unimpaired, and they still furnish the measure of such obligation and right. In *First Div., etc., R. Co.* v. *Parcher*, 14 Minn. 224, (297,) it was held that the exemption from taxation was not a personal privilege conferred on the Minnesota & Pacific Railroad Company, but a right appurtenant to its lines of road; and in *Chicago, M. & St. P. Ry. Co.* v. *Pfaender*, 23 Minn. 217, that the condition annexed to it (to wit, the obligation to pay the percentage on gross earnings) always accompanied it as to every part of the road, so that any company in acquiring any portion thereof, with the franchises and immunities appertaining thereto, took it subject to the condition, and burdened with the charge. So that, when the line of road in question here passed to the St. Paul & Pacific Railroad Company, then to the First Division of the St. Paul & Pacific Railroad Company, and finally to the St. Paul, Minneapolis & Manitoba Railway Company, each took it with the exemption, and the obligation to pay the percentage. And as the exemption and charge would accompany any part, however small, of the original company's lines, it

follows that, ordinarily, if any company should acquire any estate or interest in any part of such lines that would give it the right to operate the same as a railroad, and to receive gross earnings from operating it, the company would take and hold such estate or interest exempt from taxation, but subject to the obligation to pay the percentage on the gross earnings received by it.

This is not seriously questioned. The defendant rests its defence on the proposition that no such estate or interest passed to it by the contract between it and the St. Paul, Minneapolis & Manitoba Railway Company, and that if the contract did pass such estate or interest, it was exempted, without the obligation to pay the percentage, by Sp. Laws 1870, c. 65, § 1.

The effect of the contract between the two companies must be determined by its terms, without reference to the manner in which, at times, from motives of convenience or otherwise, the business of the defendant over the line has been conducted. Whatever estate or interest passed by the contract remains in it unaffected, so far as this case shows, by anything done since. The terms of the contract bearing on the question whether any estate or interest passed to the defendant may be briefly stated. By it the St. Paul, Minneapolis & Manitoba Railway Company, designated in it as the party of the first part, covenants with the defendant, designated as the party of the second part, "that the said party of the second part, its successors and assigns, shall henceforth have, possess, and enjoy the free and unobstructed perpetual use, and the right and title to such use, in common with the said party of the first part, its successors and assigns, of the said branch line," (being the line from St. Paul to St. Cloud,) "and of that part of said main and extension lines extending from East Minneapolis to Minneapolis, and from East St. Cloud to St. Cloud, for the running and operating of the locomotive engines, cars, and trains of the said party of the second part, its successors and assigns, from, to, and between the stations and depots owned, used, and occupied by the said party of the first part in St. Paul, Minneapolis, and St. Cloud, and the terminus of the said Western Railroad at Sauk Rapids, subject only to the necessary regulations for the safety of the trains, and the convenient transaction of the business of both said

parties;" and that the party of the second part should thenceforth forever have, possess, and enjoy the free and unobstructed use, and the right to such use, of certain terminal facilities described in detail, including the separate and exclusive use of not less than 10 acres of land in the city of St. Paul for freight purposes.   There are provisions for putting the line in good condition at the expense of the party of the first part, and afterwards keeping it in repair at the expense of both parties; for regulating the division of the business over the line, and the rates, for the purpose, evidently, of avoiding injurious competition; for apportioning the cost of station service, etc.; the movement of trains to be under the supervision and direction of some person satisfactory to the party of the second part, its successors or assigns.

These provisions do not prevent the contract operating to pass an estate or interest, any more than do provisions very commonly inserted in leases, regulating and restricting the lessee's use of the premises, have that effect; nor does the fact that a right to exclusively occupy and use is not granted.   An undivided interest in land may be leased as well as a separate interest; and so with the right to use in common with either the lessor or some other person.   The contract is not at all one for service, as might be a temporary or limited contract to haul cars over the line.   The parties themselves regarded it as creating a right that might be transferred by the party of the second part, and that bound the property, into whose hands soever it might pass. They intended to pass, and did pass, an interest, an estate, in the property,—such an estate or interest as should enable the defendant to operate the railroad to the extent of running its trains over it, and receive gross earnings therefrom, and by means of which, and by no other means, it has been able to and has operated the railroad, and received such earnings.

Sp. Laws 1870, *c.* 65, § 1, is as follows: "That the lands, franchises, property, stock, and capital of the Northern Pacific Railroad Company shall be liable to assessment and taxation at the same rate and in the same manner, and not otherwise, and shall be exempt from assessment and taxation to the same extent, and upon the same terms and conditions, as the lands, property, and franchises of the

Lake Superior & Mississippi Railroad Company, as is provided in and by an act entitled 'An act in relation to the taxation of lands granted to the Lake Superior & Mississippi Railroad Company,' approved March 3, 1865 : *provided,* however, that the gross earnings of the said railroad company, on which a percentage is to be paid to the state, shall include only the earnings of that portion of the Northern Pacific railroad constructed and operated by said company within the limits of this state."

The act of March 3, 1865, referred to, provided for a payment to the state, by the Lake Superior & Mississippi Railroad Company, of a percentage on the gross earnings of its railroad, "and the payment of such per centum annually, as aforesaid, shall be and is in full of all taxation and assessment whatever."

Upon the act of 1870 the defendant argues that its intent was to exempt not only the lands, franchises, property, stock, and capital which the company then had, or which the legislature contemplated the company might acquire for the purpose of constructing and operating the line of railroad it was then authorized to construct and operate, but also all lands, franchises, etc., which it might at any time afterwards acquire, whether for the purpose of constructing and operating that line or not; and that the per centum which should be paid to the state as the consideration for such exemption should be only upon the gross earnings of that particular line lying within this state. And it lays great stress on the fact that while, for the purpose of designating the gross earnings on which the percentage shall be estimated, the language is, "that portion of the *Northern Pacific railroad* constructed and operated by the said company within the limits of this state," in designating the property to be exempt, the language is, "the lands, franchises, property, stock, and capital of the Northern Pacific Railroad *Company;*" claiming that there is a distinction between the Northern Pacific railroad, and the lands, property, and franchises appertaining thereto, and the Northern Pacific Railroad Company, and the things belonging to that company.

It is to be observed, however, that the exemption is not a positive, absolute exemption. The lands, franchises, etc., are to be exempt "to the same extent and upon the same terms and conditions as the

lands, property, and franchises of the Lake Superior & Mississippi Railroad Company," under the act of March 3, 1865. To ascertain the extent of defendant's exemption, reference must be had to that act. In that act, in reference to the matters of taxation, exemption, and commuting for taxes, there are mentioned—*First*, the lands granted to aid in the construction of the Lake Superior & Mississippi railroad; and, *second*, the railroad. And the payment of three per cent. annually on the gross earnings of said railroad is declared to be in full of all taxation and assessment whatever. In full of all taxation and assessment on what? Literally construed, on the granted lands and the railroad, for no other subject of taxation is mentioned in that connection. The franchises, stock, capital, and other property of the company are not mentioned. Undoubtedly, the exemption of the railroad, in consideration of a per centum upon its earnings, would, by necessary implication, be held to cover whatever might be necessary to the construction and operating of the railroad, and making such earnings upon it, including the necessary franchises. But it would require a more liberal interpretation than a court could give the act to make it cover any other railroad, not then in contemplation, which the company might afterwards acquire and operate, with the franchises pertaining to it, or indeed any other property not pertaining to or necessary to constructing and operating the railroad in the mind of the legislature at the time of passing the act.

As, by the terms of the act of 1870, the property of defendant is exempt to no greater extent than the property of the Lake Superior & Mississippi Railroad Company under the act of 1865, this would defeat defendant's claim to exemption in this case. But, aside from that, it would be difficult to suppose, without language irresistibly leading to the conclusion, that the legislature intended the exemption to have the effect claimed for it. At that time the defendant had no property and no franchises except such as pertained to constructing and operating a line of railroad extending across this state, and into and across one other state, and several territories. But a small part of the proposed line lay within this state. There were many other lines of railroad in the state, in existence or provided for by legislation, either intersecting or connecting with defendant's proposed line,

or so placed that they might in time become desirable to defendant, as a part of its system, as branches or feeders to its main line,—all of which railroads possessed an exemption similar to that of the original Minnesota & Pacific railroad, and upon the same or similar conditions of paying to the state a per centum upon gross earnings. The construction of the act of 1870, claimed by defendant, would enable it, if at any time it should acquire, by purchase or lease, any or all of these lines, to relieve them from this condition, with no other consideration to the state than the payment of the per centum on the gross earnings of its single main line. To put it most favorably for the defendant, it must be doubted that the legislature intended any such result. And the doubt determines the construction of the act, for it must be resolved in favor of the state.

No weight is due to the fact that by the proviso to the act the gross earnings on which a per centum is to be paid include only the earnings of that portion of the Northern Pacific railroad constructed and operated within the limits of this state. There is no need to attribute an intention to make a distinction between the property to be exempt, and that the gross earnings of which should furnish the basis for estimating the amount to be paid in consideration of the exemption. Without that proviso, it might be claimed that the per centum should be estimated upon the gross earnings of defendant's entire line, as defined by the act of congress incorporating it. To exclude that part of the railroad without the limits of the state,—to limit the per centum to the gross earnings of the property which the legislature could exempt and did exempt, to wit, that within the state,— was the manifest purpose of the proviso.

We therefore conclude that the defendant took and holds its interest in the line of road in question subject to the obligation imposed on that line by the act of 1857.

Order affirmed.