·COUNTY OF STEVENS *vs.* ST. PAUL, MINNEAPOLIS & MANITOBA RAILWAY COMPANY.

March 2, 1887.

**Railway—Exemption of Land Grant from Ordinary Taxation—Successive Corporations.**—*First Division, etc., R. Co.* v. *Parcher*, 14 Minn. 224, (297,) and other cases, followed, holding that the exemption from ordinary taxation, originally created in favor of the Minnesota & Pacific Railroad Company, passed, with the lands to which it was appendant, to the St. Paul & Pacific Railroad Company, and to the First Division of the St. Paul & Pacific Railroad Company.

**Same—Modification of Exemption as to Land Contracted to be Sold —Acceptance by Company.**—That right of exemption being a contract between the state and the corporation, the act of March 2, 1865, (Sp. Laws, c. 6,) modifying that exemption, was ineffectual until accepted by the corporation.   It not appearing that this was accepted until after the act of March 4, 1865, (Sp. Laws, c. 9,) the latter act (protecting as against tax proceedings the title remaining in the corporation after the lands had been contracted to be sold) is to be deemed a tender by the state of a new contract, which upon acceptance became effectual.

**Same—Title of Company after Contracting to Sell.**—It being established by the admissions of the parties that this respondent succeeded to the ownership of certain lands formerly granted to and held by the Minnesota & Pacific Railroad Company and its successors, and to the exemption from ordinary taxation formerly enjoyed by those corporations, and pertaining to such lands, *held*, that the title remaining in the respondent after it had contracted to sell such lands (the purchase price being still unpaid, and the conditions of the purchase being still unperformed) is protected, in accordance with the terms of the act of March 4, 1865, from sale for taxes.

**Same—Validity of Statutes.**—*Held*, following former decisions, that the provisions of law relating to such exemption (originally created prior to the adoption of the constitution) are not unconstitutional.

**Same—Statutes—Repeal.**—The act of March 4, 1865, was not repealed by the general tax law of 1878.

In proceedings in the district court for Stevens county to enforce payment of taxes on real estate in that county remaining delinquent·

on the first Monday of January, 1886, the St. Paul, Minneapolis & Manitoba Railway Company made answer as to certain parcels embraced in the delinquent list, alleging the matters recited in the opinion. At the hearing before *Brown*, J., the averments of the answer were admitted to be true, and judgment was ordered discharging the estate, title, and interest of the railway company, and of any trustee or mortgagee thereof, in each of the parcels of land, from the taxes set down against them in the delinquent list. At the request of the county attorney the case was then certified to this court.

*C. L. Brown* and *H. H. Phelps*, for plaintiff.

*R. B. Galusha, S. L. Campbell*, and *Young & Lightner*, for defendant.

DICKINSON, J. There is here presented the question of the taxability of the estate or interest which the St. Paul, Minneapolis & Manitoba Railway Company has in its lands after the same have been contracted to be sold, but before payment of the purchase price, or the performance of the contract conditions so as to entitle the purchaser to a conveyance. In the tax-list filed in the office of the clerk of the district court the lands in controversy were charged with taxes for the year 1884. The railroad company interposed an answer setting forth the facts, which, as is claimed, show that its estate in the lands is exempt from taxation. The facts as alleged in the answer were stipulated to be true, and were so found by the court. It will be sufficient for the understanding of the case to here allude to these facts, without restating them except in some particulars. The case thus presented comprises the facts of the incorporation of the Minnesota & Pacific Railroad Company by the territorial act of May 22, 1857, (Laws 1857, Ex. Sess. *c.* 1,) and the regranting to that corporation of the congressional grant of lands, made in that year to the territory to aid in the construction of that line of road, and the exemption from ordinary taxation of such granted lands "till sold and conveyed by said company," in consideration of the annual payment of a percentage of its gross earnings; the subsequent revesting in the state of the franchises, privileges, land, and property of that corporation, and that the same were regranted by the state to the St. Paul & Pacific Railroad Company by the act of March 10, 1862, (Sp. Laws 1862,

*c.* 20;) the due organization as a corporation, in 1864, of the First Division of the St. Paul & Pacific Railroad Company, and that the same became the owner of the so-called "Main Line" of that road, and of all the lands granted to aid in the construction thereof, and of all the property, rights, franchises, immunities, and exemptions of the Minnesota & Pacific Railroad Company and the St. Paul & Pacific Railroad Company relating to said line, or to said granted lands; that such organization of the First Division Company, and its title to the road, lands, franchises, immunities, and exemptions were duly confirmed by a public law of the state, approved February 6, 1866, (Sp. Laws 1866, *c.* 1;) the additional congressional grant of March 3, 1865, (13 U. S. St. at Large, 526,) to aid in the construction of the lines of the St. Paul & Pacific Railroad Company, and the re-granting of the same by the state to that corporation, by the act of March 2, 1865, (Sp. Laws 1865, *c.* 6;) the legislative enactment of March 4, 1865, (Sp. Laws 1865, *c.* 9,) entitled "An act in relation to the taxation of lands granted to the St. Paul & Pacific Railroad Company," providing, among other things, that, whenever any of these lands should be "contracted to be sold," they should be placed upon the tax-list for taxation as other real estate, but that, in enforcing the collection of the taxes thereon, the title or interest of the said company, or of any trustee or mortgagee thereof, should be in nowise impaired or affected thereby, but that the improvement thereon, and all the interest of the purchaser, should be sold in case of default in the payment of the tax; the due acceptance of that act of March 4, 1865, by both the St. Paul & Pacific and the First Division Companies, in the manner designated in the act; that thereupon the said law became, and has ever since been, obligatory upon the state and upon the said companies, and upon this respondent as their successor, and that the same, and the contract therein expressed, has never been altered, repealed, or rescinded; the due organization of this respondent as a corporation under the general law of the state, and especially under chapter 30 of the General Laws of 1876; that, by purchase at mortgage foreclosure sale in 1879, this respondent became and still is the owner in fee of all that part of the lines of the several roads above referred to, extending from St. Anthony to Breckenridge,

formerly known as the Main Line of the First Division of the St.. Paul & Pacific Railroad Company, and of the lands granted by the United States by several acts of congress, and by the state regranted to said companies, or either of them, to aid in the construction of said main line, and of all the property, rights, franchises, immunities, exemptions, and privileges at any time possessed by said companies, or either of them, including the exemption from ordinary taxation, heretofore mentioned, pertaining to said line of railroad and said granted lands; which purchase by this respondent, and its right and title to all said line of railroad, lands, property, rights, franchises, immunities, exemptions, and privileges, were fully confirmed to this respondent by an act of the legislature of this state, approved March 7, 1881, entitled "An act confirming the organization and certain purchases of the St. Paul, Minneapolis & Manitoba Railway Company," (Sp. Laws 1881, c. 412,) etc.; that the lands here in question are a part of the lands granted by congress and by the state to aid in the construction of said main line, and ever since the year 1879 have been and now are owned in fee by this respondent, although the same have been by it contracted to be sold; but the purchasers have not paid the purchase price, nor performed the conditions of their contracts of purchase, so as to be entitled to a conveyance of the lands.

That the exemption from ordinary taxation, created in 1857 in favor of the Minnesota & Pacific Railroad Company, subsequently passed with the lands, and as a right appendant thereto, to the St. Paul & Pacific Railroad Company and to the First Division of the St. Paul & Pacific Railroad Company, may be now accepted without question. It was so decided 18 years ago in the case of the last-named company v. *Parcher*, 14 Minn. 224, (297,) which decision has been ever since followed. *State* v. *Winona & St. Peter R. Co.*, 21 Minn. 315; *Minnesota Central Ry. Co.* v. *Melvin*, Id. 339; *Chicago, Mil. & St. Paul Ry. Co.* v. *Pfaender*, 23 Minn. 217; *City of St. Paul* v. *St. Paul & Sioux City R. Co.*, Id. 469, 475; *County of Nobles* v. *Sioux City & St. Paul R. Co.*, 26 Minn. 294, (3 N. W. Rep. 701;) *State* v. *Northern Pacific R. Co.*, 32 Minn. 294, (20 N. W. Rep. 234.) In the *Parcher Case, supra,* the doubt was expressed as to whether the

granted immunity from taxation was a *franchise* of the Minnesota & Pacific Company, which, after resumption by the state, had been included as such in the franchises reconferred upon the St. Paul & Pacific Company. The decision in that case was not put upon that ground, but its correctness has received support from a late decision of the supreme court of the United States declaring an immunity from taxation to be a *franchise.* *Given* v. *Wright,* 117 U. S. 648, (6 Sup. Ct. Rep. 907.) We are not disposed to reconsider a question so long settled, and so often recognized as settled, in this court; and will only add that we do not think that the decision in the *Parcher Case,* sustaining the exemption in favor of the successors of the Minnesota & Pacific Railroad Company, has been disturbed by the decisions of the supreme court of the United States.

Assuming, then, that the exemption created in 1857 passed, with the lands, unimpaired to the successors of the Minnesota & Pacific Company, we come to consider how that right was affected by the acts of March 2 and March 4, 1865, (chapters 6 and 9, Sp. Laws 1865.) By the terms of the earlier of these acts it was provided that the lands of the St. Paul & Pacific Company should be subject to taxation as soon as sold, leased, or contracted to be sold or leased. For the purpose of this case it is unnecessary to consider what would have been the effect of this enactment if, without modification, it had been accepted by the corporation; for it does not appear that there was any acceptance of the provisions of that act prior to the enactment of March 4th. The modification of the right of exemption expressed in the act of March 2d (assuming that, standing alone, it should be construed as rendering the title still remaining in the railroad company taxable as soon as the lands should be contracted to be sold) could only have been made effectual by the assent of the corporation; for the exemption previously existing was a contract right, which the state alone had not the power to impair. *First Div., etc., R. Co.* v. *Parcher,* 14 Minn. 224, (297.) Nor until its acceptance, at least, was the act of March 2d effectual to place any constitutional restraint upon the power of the legislature to enlarge the exemption proposed in it, so that the exemption created in 1857 should be subject to a less restriction or limitation than was expressed in the act of March 2d.

From the facts as presented in this case the act of March 4th appears to have been an offer on the part of the state of another and a modified term respecting the taxation of the lands, in place of that embraced in the contract tendered in the enactment of two days previous, so as to protect from taxation the interest of the corporation in its lands, but subjecting that of the purchaser to the operation of the tax laws. This, if it did not restrict, did not enlarge, the previously existing exemption, and, being accepted by the corporation, was subject to no constitutional objection. It is not disputed that the exemption here claimed and allowed by the court below is such as was expressed in the act of March 4th.

The point that sections 1 and 3 of article 9 of the constitution forbid this legislation was long ago settled in the *Parcher Case,* above cited, and in the cases of *State* v. *Winona & St. Peter R. Co., supra,* and *City of St. Paul* v. *St. Paul & Sioux City R. Co., supra;* it being held that those sections of the constitution did not prevent the legislature from modifying the terms of a provision for the payment of a percentage of gross earnings in lieu of other taxation, in a case where that method of taxation had been established prior to the adoption of the constitution, and, in the latter case cited, that by the constitutional amendment of 1871 (section 32, article 4) such legislation had been confirmed.

The claim that the act of March 4th is inconsistent with the general tax law of 1878, (Laws 1878, *c.* 1; Gen. St. 1878, *c.* 11,) and so was repealed thereby, cannot be sustained. We need not here enter into an examination of these laws to determine whether they are inconsistent; for the prior enactment embodied the elements of a contract between the state and the corporation, which had been in force and acted upon both by the state and by the company for many years, and its annulment by the act of the state alone was impossible under the federal constitution. Again, such a repeal would be contrary to the constitutional amendment of 1871, above referred to, by which the legislature was prohibited, without the direct concurrence of the people, from repealing or amending any law providing for the payment by any railroad company of a percentage of its gross earnings in lieu of other taxes and assessments upon its real estate, road, etc.

But, aside from these considerations, it is an admitted fact in the case that this law has never been repealed.

But it is contended that this exemption in favor of the First Division of the St. Paul & Pacific Railroad Company never passed to this respondent; that the mortgage through which its title was derived was not in terms sufficient to include the right in question. But by the admitted facts, to which we have referred, the contrary is established for the purposes of this case, and we forbear considering this question, upon which, as was intimated by the attorney general when the cause was presented, he should have desired to be heard on the part of the state if the question had been open for consideration. And for the same reason the constitutionality of the act of 1881, confirming in- this respondent its asserted rights, will not be considered. It is unimportant, except as it might bear upon the facts as to the acquirement by the respondent of the title to these lands with the pre-existing right of exemption, which facts are admitted.

Our conclusion is in accordance with that of the learned judge whose decision is in review, and his determination in the premises is affirmed.