STATE v. NORTHWESTERN TELEPHONE EXCHANGE COMPANY.[1]

March 26, 1909.

Nos. 15,926, 15,927—(50, 51).

**Proportionate Part of Interstate Earnings Taxable.**

A proportionate part of the earnings of the property of telephone companies within this state, resulting from its use in interstate commerce,

[1] Reported in 120 N. W. 534.

constitutes a part of its gross earnings, upon which it must pay the three per cent. tax provided for by chapter 314, Laws 1897.

### Gross Earnings Tax is Tax on Property.

The gross earnings tax provided for by the laws of this state is a tax upon the property of the corporations, and not upon the corporations, or upon the right to engage in business. Its adoption effected a change in the form, but not in the character, of the tax.

### May be Computed Regardless of Use of Property.

The state has a right to impose a tax upon the property within its borders, regardless of the uses to which it is devoted by its owners; and as a method of determining what is a fair and equitable property tax it may permit the tax to be computed on the basis of a fixed percentage of the earnings of the property.

### Collections for Others are not Gross Earnings.

Money collected by a telephone company from its patrons and subscribers for other telephone companies, with which it has traffic arrangements, is not a part of its gross earnings.

### Special Messenger Fees are Gross Earnings.

Money received from messengers not regularly in the company's service, but employed specially to call nonsubscribers to the telephone stations, and money collected from the company's patrons and subscribers as messenger charges actually paid to persons in whose buildings the company's booths are located, and as compensation for such location, are a part of the gross earnings.

### Value of Free Service not Gross Earnings.

The amount which the regular rates would have produced, had the service, which was in fact rendered without charge, been charged for at the regular rates, is not a part of the gross earnings.

Action in the district court for Hennepin county to recover $4,959.-48 alleged to be due the state as part of defendant's gross earnings tax for the year 1904. The case was tried before Holt, J., who found for the state in the amount of $1,481.16. From judgment entered pursuant to the findings, both parties appealed. Affirmed on both appeals.

*Edward T. Young,* Attorney General, *Chas. S. Jelley,* Assistant Attorney General, and *Geo. W. Peterson,* Assistant Attorney General, for the State.

*Cobb & Wheelwright,* and *E. A. Prendergast,* for defendant.

ELLIOTT, J.

This case comes to this court upon appeals by both the plaintiff and the defendant; but the questions involved are so intimately connected that we will dispose of the appeals in one opinion.

The action was brought by the state against the Northwestern Telephone Exchange Company to recover the sum of $4,959.48, alleged to be due for taxes which were properly payable under the provisions of the gross earnings law of this state. It was alleged that the defendant was a telephone company, engaged in carrying on a general telephone business, with its principal office and place of business in the city of Minneapolis; that the company, in lieu of all other taxes and assessments upon its property held for use in and about its business, was obliged to pay into the state treasury on January first of each year three per cent. on its gross earnings; that for the purpose of ascertaining said gross earnings the company had been and is obliged, on or before December fifteenth of each year, to furnish a verified abstract of such gross earnings to the state treasury; that a statement was furnished for the year 1904, but that it was incorrect, in that the company failed to report and furnish a certain part and portion of its gross earnings, which were subject to taxation for that year; that the items thus omitted were as follows:

|  |  | Earnings | Tax at 3% |
|--|--|---------|-----------|
| Item 1. | Interstate toll earnings............ | $36,252 53 | $1,087 57 |
| Item 2. | Messenger earnings............... | 36,795 76 | 1,103 87 |
| Item 3. | * * * * * * * * * * * * | | |
| Item 4. | Receipts from sale of material..... | 33,736 22 | 1,012 09 |
| Item 5. | Rebates or charges to earnings before reporting the same for taxation purpose to Minnesota...... | 36,374 08 | 1,091 22 |
| Item 6. | Income other than from operation of the telephone company, such as dividends and interest on securities owned by it................ | 12,157 91 | 364 73 |
| Item 7. | Free telephone................... | 10,000 00 | 300 00 |
| | Total ........................ | $165,316 50 | $4,959 48 |

The company refused to pay these amounts, for the reason, as it alleged, that the items were not such as were properly included within

a gross earnings tax. The trial court found from the evidence and the stipulation that the business of the defendant company during the time it has been operating and carrying on a telephone system within this state consisted and consists of exchanges, all of which are connected with it by long-distance telephone lines for the transmission by the public for hire of messages by telephone; that its principal place of business has been and is in the city of Minneapolis; that in addition to its telephone system within the state of Minnesota, during all the times in question, it has been maintaining and operating similar telephone systems, exchanges, and toll lines throughout the states of North and South Dakota and Wisconsin, and toll lines within the state of Iowa, all of which said systems, exchanges, and toll lines have been operated in connection with its toll lines and exchanges in Minnesota; that it has been and now is a public carrier of messages by telephone, transacting its said business as such carrier over its various lines, wires, and systems herein referred to; that during all of said times messages by telephone have been continuously sent and are now being sent from various points within the state of Minnesota to points without said state, and from points throughout said state to points within said state, over said toll lines and systems, and that it has, during all said times, been engaged in interstate commerce, as well as intrastate commerce; that during all of said times said telephone company had traffic agreements with telephone companies operating in states other than those above enumerated, so that its patrons and subscribers within the state of Minnesota could, and in fact do, send messages by telephone to points within said state of Minnesota over the toll lines of the defendant and the lines of said other companies to other points, where telephone systems exist in the United States, east of the Missouri river; that in the same way messages by telephone have been and are now being sent over the lines aforesaid from all points where telephone service exists east of the Missouri river to points within the state of Minnesota.

As to item 1 referred to above, the court found that during the year 1904, in addition to the earnings reported from business done wholly within this state, other earnings from the system were received, and that the sum of $36,252.53, specified under such item 1, represents a proportion of such earnings, based upon the proportion of

the mileage within the state of Minnesota over which said business was done to the entire mileage of the company over which said business was done, of earnings on all said interstate business for the year 1904 passing through, into, or out of said state; that prior to the commencement of this action no request had been made by the state of Minnesota upon defendant to pay a tax on any of the defendant's earnings, except those derived exclusively from telephone business beginning, continuing, and ending within the limits of the state of Minnesota, except that in the year 1898, when the defendant made its first return and abstract of earnings after the passage of chapter 314, p. 581, of the Laws of Minnesota for the year 1897, the question was taken up with the treasurer of the state of Minnesota as to whether or not the defendant should pay any tax on earnings such as those specified in item 1 of the complaint; and the letters and requests attached as exhibits to the answer, and the opinion then given by Hon. H. W. Childs, Attorney General of Minnesota, also truly set out in the exhibits attached to the answer, are all that was done by the officers of the state in regard to such claim for taxes until this present action was brought by the attorney general.

As to item 2, receipts for messenger earnings, [it was found] that $25,301.01 thereof represent amounts collected by the company from its patrons and subscribers, for other telephone companies, with whom the defendant had traffic arrangements, as connecting carriers, for terminal fees and messenger services for said companies, and for the share of said companies, for sending the messages over their respective lines, and that said amounts, and all thereof, were paid over by the defendant company to the said other companies as and for their share for sending such messages; that $6,494.75 of this item represents money charged and received for messengers not regularly in the defendant's service, but employed specially to call nonsubscribers to the telephone stations; and that $5,000, the balance of this item, has been collected from the defendant's patrons and subscribers as messenger charges actually paid to the persons in whose buildings the defendant's telephone booths were located, and also as compensation for such location.

Item 3 in the complaint was withdrawn.

As to item 4, [it was found] that the defendant, during 1904, sold to other telephone companies telephone poles and materials, for the sum of $33,736.22; that said sales were made as an accommodation to said other companies, and not for profit, nor were they made in the operation or management of the defendant's telephone system; that said materials so sold as aforesaid were never a part of the defendant's telephone system, or any part of the appurtenances or appendages thereof; nor were said materials ever held or used for, in, or about the construction, repairing, renewal, maintaining, or operating of its said telephone system or lines; nor were the receipts from said sales derived by the defendant from the owning, operating, and conducting of any of its telephones or telephone lines, or the carrying on of its said telephone business, and the giving of a general telephone service in the state of Minnesota.

As to item 5, [it was found] that the defendant received during 1904 from railway companies transportation of the value of $1,625, which is included in said item; that the balance of $34,749.08 does not represent any income to the defendant, but are rebates and discounts to customers, arising through facts such as the following: At the beginning of the month a customer is charged rental in advance at the regular rate, and in cases where the service is terminated before the expiration of the month, for which said rental is charged, a proportionate rebate or credit is entered on the books, so as to balance the charge made. Certain customers, having a number of telephones, are charged on the books with the regular price and then credited with such discount as has been agreed upon between the defendant and said customers. Rebates are also made on interrupted service, or failure to render service already charged for.

As to item 6, [it was found] that during 1904 the defendant received as interest and dividends on securities owned by it $12,157.91, but that said securities were never a part of the defendant's telephone system, or any part of the appurtenances or appendages thereof; nor were said securities ever held or used for, in, or about the construction, repairing, renewal, maintaining, or operating of said system; but such securities were held by the defendant by way of investment only.

As to item 7, [it was found] that the defendant furnished during 1904 telephone service to certain municipal corporations, public officials,

and charitable institutions, which, if charged at the current rates for similar services, would amount to $13,275; that said services were furnished free and without charge, and the defendant has not received any compensation, money, or anything of value therefor, nor does it expect to make any charge therefor.

From these facts the court found that the state is entitled to the three per cent. tax as follows: On $36,252.53, being the whole of item 1, interstate toll earnings; on $11,494.75 of the amount included in item 2, messenger earnings; and on $1,625 of the amount included in item 5, transportation from railroad companies. That the amount payable thereon for the year 1904 amounts to $1,481.16. The claim of the state to the tax on the balance of the messenger earnings, on the whole of the receipts from the sale of material, on the balance of rebates, on the receipts from dividends on securities held by the company, and on the amount which, at regular rates, would have been received for the use of telephones which were in fact furnished free to the users, was disallowed by the trial court.

1. The principal question raised upon this record is whether the Northwestern Telephone Exchange Company is required under the provisions of chapter 314, Laws 1897, to pay the gross earnings tax therein provided for on the earnings from its property situated in this state and used in interstate commerce. This statute is entitled "An act to provide for the imposition and collection of a proportionate earnings tax upon the gross earnings of all property within the state of Minnesota of all telephone companies or owners whose lines are in or extend into or through said state, in lieu of other taxes."

Section 1 of this statute provides that "any person or persons, copartnership, association or corporation now or hereafter organized under the laws of this state, or any copartnership or association or corporation now or hereafter organized under the laws of any other state, territory or country, owning, operating and conducting telephones and telephone lines which are in or extend into, in or through this state, and carrying on a general telephone business and giving a general service in this state, shall pay into the state treasury on or before the 1st day of January in each year the sum of three (3) per cent. of his or their or its gross earnings, which said payment shall be in lieu of all other taxes and assessments whatever upon each said telephone

company or system, its appurtenances and appendages, and upon all its property held or used for, in or about the construction, repairing, renewal, maintaining and operating its system or lines and also upon the capital stock of any such association or corporation or the income of any such person or persons."

Section 2, so far as material, reads as follows: "For the purpose of ascertaining the gross earnings aforesaid, an accurate account of all such earnings shall be kept by such owner, owners, copartnership, association or corporation, and an abstract thereof shall be furnished by such owner or owners, copartnership, association or corporation to the treasurer of this state on or before the 15th day of December in each year."

The telephone company claims that the language of this statute, when read in connection with that used in the title, shows that the legislature intended to restrict the tax to earnings on business which originates and ends within this state. The authorities cited do not, in our judgment, sustain this contention. Practically all the cases which give support to this view proceed on the theory that any other construction would render the particular statute unconstitutional as an attempt to impose a tax upon interstate commerce. In accordance with the established rule of construction, it was therefore held that the statute should, if possible, be so construed as to render it constitutional. The Dakota statute construed in Northern Pacific v. Barnes, 2 N. D. 310, 51 N. W. 386, and McHenry v. Alford, 168 U. S. 651, 18 Sup. Ct. 242, 42 L. Ed. 614, provided for the payment in lieu of all other taxes of "a percentage of all the gross earnings of the corporation owning or operating such railroad, arising from the operation of such railroad as shall be situated within this territory."

In the McHenry case it was suggested that a construction which would make this statute include earnings arising from the transportation of persons and property between different states would render it unconstitutional, but the question was not decided. The same idea seems to have controlled the decision of the Barnes case; that is, in order to sustain the statute, it was assumed that it was necessary to so construe it to make it applicable to intrastate commerce only.

So, in Pacific Express Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035, the construction adopted was said to be necessary

in order to sustain the statute. The statute provided that express companies should make a report to the state auditor, "showing the entire receipts for business done within this state," including "its proportion of gross receipts for business done by such company in connection with other companies." The court reached the conclusion that "it was not the legislative intention, in the enactment of this statute, to impinge upon interstate commerce, or to interfere with it in any way whatever, and that the statute, when fairly construed, does not in any manner interfere with interstate commerce."

In Western Union Tel. Co. v. Alabama State Board, 132 U. S. 472, 10 Sup. Ct. 161, 33 L. Ed. 409, a statute which imposed a tax upon the gross amount of the receipts of the company derived from the business "done by it in the state" was construed to apply only to the company's receipts from business done within the state.

By the statute under consideration in State v. United States, 93 Md. 314, 48 Atl. 918, a tax was imposed upon the gross receipts of certain corporations doing business within the state, and it was said that the legislature could not have intended to levy a tax upon the business of the company done by it without the state. "This construction of the statute," said Mr. Justice Briscoe, "is strengthened by a reference to that part of the statute which provides that the provisions of the act shall apply to all corporations of a like kind to those enumerated by the act, which are doing business in this state, and which are incorporated by or under the laws of any other state. It is, then, quite clear that the tax required by the statute to be paid by foreign corporations is limited to business done by them within the state, and it cannot be presumed that the legislature intended to unjustly discriminate against domestic corporations, doing business in this state, by taxing the business done by them outside of the state."

When we consider the principles which seem to have controlled the decision of these cases, it is apparent that they do not require us to adopt the construction contended for by the telephone company. The gross earnings tax provided for by the Minnesota statutes is not a tax upon the right to carry on interstate commerce, and there is nothing in the constitution or laws of the United States which forbids the state to tax property which is within its borders merely because it is employed in interstate or foreign commerce. Pullman's Palace Car Co.

v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Judson, Interstate Commerce, § 19; State v. Twin City Tel. Co., 104 Minn. 270, 286, 116 N. W. 835. The gross earnings tax is a system by which the amount of tax upon the property is determined by a method which has generally been found equitable and satisfactory. It is a tax upon the property, and not upon the corporation. As said in Minneapolis & St. L. R. Co. v. Koerner, 85 Minn. 149, 88 N. W. 430: "It has long been settled by the decisions of this state that the gross earnings tax law was not intended to change the character of the tax, but, for the purpose of certainty, was intended to change the method of computation. The amount required to be paid remains a tax upon the railroad property, and not against the corporation." See also City of St. Paul v. St. Paul & S. C. R. Co., 23 Minn. 469; County of Ramsey v. Chicago, M. & St. P. Ry. Co., 33 Minn. 537, 24 N. W. 313; County of Todd v. St. Paul, M. & M. Ry. Co., 38 Minn. 163, 36 N. W. 109; County of Traverse v. St. Paul, M. & M. Ry. Co., 73 Minn. 417, 76 N. W. 217. That is, the state has the constitutional right to impose a tax upon the property within its borders, regardless of the use to which it is devoted by its owners, and, as a method of determining what is a fair and equitable property tax, it may permit the tax to be commuted on the basis of a fixed percentage of the gross earnings of the property.

When chapter 314, Laws 1897, was enacted, the gross earnings system of taxation as applied to railroads had been in force for many years. It had been fully developed through general and special legislation and constitutional amendments, and had proven so satisfactory that it was thought advisable to extend it to other kinds of corporations. In 1895 the constitution was so amended as to authorize the legislature to impose a gross earnings tax upon telephone and other corporations therein named. When it enacted chapter 314, Laws 1897, the legislature intended to extend the system which had already been applied to railroads, without substantial change or modification, to other corporations. State v. Twin City Tel. Co., supra; State v. Northwestern Tel. Exch. Co., 84 Minn. 459, 87 N. W. 1131. In that system the words "gross earnings" had a definite meaning, which must have been understood by the legislature. In chapter 235, p. 368, Laws 1889 (section 2753, G. S. 1894), the words "gross earnings," as applied

to foreign railroad corporations, were declared to mean "all earnings on business beginning and ending within the state and a proportion based upon the proportion of the mileage within the state to the entire mileage over which such business is done, of earnings on all interstate business passing through, into or out of the state." It is also stated in the statute that this definition of gross earnings "is in accord with the uniform practice of all railroad companies heretofore reporting gross earnings for taxation under the laws of this state." The same definition, in substance, is found in chapter 253, p. 375, Laws 1903.

When this statute was enacted in 1897 the railway companies were required to pay, and in fact were paying, the state a gross earnings tax upon a proportionate part of their earnings from interstate, as well as from all their intrastate, business. When the system was extended, it is reasonable to assume that the legislature intended that the words "gross earnings," when applied to telephone companies, should have the same meaning which had been given them in existing statutes applicable to railroad companies. The telephone companies, like the railroad companies, were engaged in interstate, as well as intrastate, commerce, and they were taxable upon their property in the state which was earning an income while used in interstate commerce. We cannot assume that the legislature intended to relieve the property from future taxation to the extent of its income from interstate business, which was an important element of its earning power, and which must previously have been taken into consideration in determining the taxable value of the property itself. Under the gross earnings system the railroads were, in order to commute their general property tax, required to pay a tax upon a proportion of the earnings of the property in the state used in interstate commerce, as well as on what resulted from its use in intrastate business. The principle was equally applicable to telephone companies, and there is no apparent reason why, in fixing a tax which was in theory the exact equivalent of the general property tax, a part of the earnings which constituted an essential element in determining the value of the property should have been excluded. A fair and reasonable construction of the statute leads to the conclusion that the legislature intended that a proportionate part of the earnings of the telephone companies, arising from interstate

business, should be included in the gross earnings on which the tax was computed.

For the purpose of ascertaining the legislative intention, we may look to the title as well as to the body of the statute. State v. O'Connor, 81 Minn. 79, 83 N. W. 498; Loper v. State, 82 Minn. 71, 84 N. W. 650; Robinson v. U. S., 42 Ct. Cl. 52; Moore v. Chartiers, 216 Pa. St. 457, 65 Atl. 936; Forman v. Sewerage Board, 119 La. 49, 43 South. 908; Allen v. Commissioners, 57 N. J. L. 303, 31 Atl. 219; Wilson v. Spaulding (C. C.) 19 Fed. 304. The telephone company lays great stress upon the phrase "all property within the state of Minnesota," which appears in the title; but, if it was the intention that this tax should be computed as three per cent. upon the income from intrastate business only, it is difficult to see why the title of the act also recites that the purpose is to provide for the imposition and collection of "a proportionate earnings tax" upon all such property. The use of the words "proportionate earnings tax" indicates that the legislature intended to apply to telephone companies the system under which other corporations were then paying taxes upon their property used within the state, based upon their earnings from intrastate business and a proportionate part of their earnings from interstate business. No question of proportion or apportionment could enter into the imposition and collection of a tax upon the gross earnings of property used in intrastate commerce only; but, before the tax could be estimated upon that part of the income of the company which resulted from the use of its property within the state in interstate commerce, it was necessary to determine the proportion which that business bore to the entire interstate commerce of the company. It was not essential that the statute should provide in detail the method by which the apportionment should be made. Any method which would be just and equitable and consistent with established legal principles might be used. For the purpose of the imposition and collection of the same kind of tax on railroads, a method of apportionment was already in use in the state, and we think it may fairly be assumed that the legislature had this in mind when it enacted the statute, which was designed to apply the same general system of taxation to telephone companies.

2. The argument based upon the practical construction which has been given the statute by the executive officers of the state can have

little force under the circumstances. At the most, the facts merely show that the tax has not been collected. The opinion of a former attorney general to the effect that it was probably not collectible was, like the decisions in several cases above referred to, based upon the absence of express language in the statute and the assumption that a contrary ruling would render the statute as a whole void. It should be noted, however, that the opinion of the attorney general contained a recommendation that the question should be submitted to the courts for determination. After several years' delay, this has now been done.

3. The trial court properly held that the $25,301.01 included in item 2, which had been collected by the defendant from its patrons and subscribers for other telephone companies with whom it had traffic arrangements, was not a part of its gross earnings, but that the $6,494.75 received for messengers not regularly in the defendant's service, but employed specially to call nonsubscribers to the telephone stations, and the $5,000 collected from the defendant's patrons and subscribers as messenger charges actually paid to the persons in whose buildings the company's booths were located, and as compensation for such location, were a part of its gross earnings. These items constitute a part of the income of the company, and the fact that the money was disbursed to persons who rendered services to or supplied accommodations for the company does not change their character. The question of profit is immaterial.

The state's claim to the tax upon the amount of certain rebates is manifestly without merit, and the same may be said with reference to the claim that the tax should be paid upon the amount which the regular rates would have produced, had the service, which was in fact rendered without charge, been charged and collected for at the regular rates.

The securities which produced dividends and interest, while the property of the telephone company, were not used in connection with its business, and the court, therefore, properly held that the income therefrom was not a part of the gross earnings of the company within the meaning of the statute. The other items do not require consideration.

Affirmed on both appeals.