## STATE v. UNITED STATES EXPRESS COMPANY.[1]

### May 19, 1911.

### Nos. 16,977—(2).

**Interstate commerce — gross earnings.**

Carriage of shipments by an express company from a point in this state to another point in this state does not constitute interstate commerce, even where the shipments are forwarded over a line of railroad that for a part of its route lies outside the state. A proportionate part of the earnings from such shipments, based on the number of miles of the route within the state, constitutes a part of the company's gross earnings, upon which the state is entitled to assess taxes, under R. L. 1905, § 1019.

**Tax upon property within state.**

The state has a right to impose a tax upon property within its borders regardless of the fact that such property may be employed by its owners in interstate commerce.

**Same — gross earnings tax.**

The gross earnings tax provided by R. L. 1905, §§ 1013–1019, is not a tax upon the earnings of express companies, or upon the companies, or their right to engage in business, but is a tax upon their property within the state.

**Interference with interstate commerce.**

A tax upon the property within the state of an express company engaged in interstate commerce, based upon its gross earnings within the state on interstate shipments, is not a regulation of or interference with interstate commerce.

[1] Reported in 131 N. W. 489.

**Sale of money orders — gross earnings.**

Receipts of an express company from the sale of money orders within this state are earnings of such company within the state, whether such money orders are redeemed within or without this state, and should be included in the gross earnings of such company in estimating the tax upon its property within the state.

**Statute constitutional.**

R. L. 1905, §§ 1013–1019, as thus construed, do not violate either the constitution of the United States or the constitution of this state.

**Recovery of taxes — limitation of action.**

The right of the state to recover taxes on the property of defendant for the year 1899 did not accrue prior to May 1, 1900, and was not barred March 1, 1906, when the Revised Laws of 1905 went into effect.

**Same.**

Section 980, R. L. 1905, abrogated the statute of limitations as to the right of the state to enforce the assessment and collection of taxes upon all property within the state subject to taxation, including the property of express companies.

**Recovery of tax on omitted returns.**

When earnings within the state for any year are omitted from the annual returns of the company, and not included in the amount of gross earnings upon which the taxes for such year were based, the state may recover taxes based on such omitted earnings in an action brought for that purpose.

Action in the district court for Ramsey county to recover $9,719.-66, the amount of taxes claimed to be due by reason of certain omitted taxable gross earnings of defendant for the years 1899 to 1909, both inclusive, not included in defendant's returns for taxation. The case was heard upon the pleadings and stipulated facts by Hallam, J., who made findings of fact and ordered judgment in favor of plaintiff for the amount demanded. From the judgment entered pursuant to the order, defendant appealed. Modified.

*Frank B. Kellogg, C. A. Severance,* and *Robert E. Olds,* for appellant.

*George T. Simpson,* Attorney General, and *George W. Peterson,* Assistant Attorney General, for the State.

Bunn, J.

Defendant is an express company organized under the laws of New York, and doing business in this state and throughout the United States. This action was brought by the state to recover the sum of $9,719.66, being taxes alleged to be due on account of gross earnings never reported by defendant. Defendant admitted that it had failed to include in its returns to the proper state officials the items of gross earnings on which the complaint alleged taxes were payable, and claimed that such items were not taxable.

A constitutional amendment passed in 1896 (Const. art. 9, § 17) authorized a gross earnings tax upon express companies. The legislature in 1897 passed an act (Laws 1897, c. 309, p. 575, § 6) providing for three per cent. tax upon the gross earnings of such companies. The rate was increased to five per cent. in 1899, and to six per cent. in 1901. The statutes as they are now, and were at the time the action was commenced, provide in substance that every express company shall annually, between January 1 and February 1, make and file with the state auditor a statement which shall contain, among other facts, "the entire receipts  *  *  *  for business done within this state, including its proportion of gross receipts for business done by such company within this state in connection with other companies." The auditor, between March 1 and April 1, determines the gross receipts of every such company, and on or before March 15. "shall assess upon each company a tax of six per cent. upon its gross receipts for business done between points within this state for the preceding calendar year as determined by the auditor, which shall be in lieu of all taxes upon its property." R. L. 1905, §§ 1013, 1015, and 1019.

The facts were stipulated. The items of gross earnings which the company failed to include in its returns to the state auditor, and which the state claims are taxable, are as follows:

First. Earnings on through shipments consigned from a point in Minnesota to another point in Minnesota, but forwarded over lines of railroad partly without the state of Minnesota. Ninety-one per cent. of this mileage is in Minnesota. The amount of the back taxes claimed on these earnings is $2,991.29, based upon the

total earnings of such shipments, without any deduction based upon the portion thereof earned without the state.

Second. "Interstate transfer business;" that is, earnings on interstate shipments received by defendant at a point in Minnesota, carried over its lines to a second point in Minnesota, the transportation by defendant being performed wholly within the state, but the transportation of such shipments while out of the state, and also within the state, but beyond defendant's lines, being performed by other connecting companies. The amount of back taxes claimed on such earnings is $504.47.

Third. Earnings from the issuance of money orders sold and issued by defendant at points in Minnesota. These money orders designate no place of payment, but are payable at any office of the company. Eighty per cent. of them are returned through banks and clearing houses to the main office of defendant in New York. No part of the revenue from this service is paid to railroad or other transportation companies. No shipments of money are connected with the issuance and redemption of money orders. The amount of back taxes on the earnings derived from this class of business is $5,788.15.

Fourth. Miscellaneous items, not reported for taxation, representing omitted earnings on intrastate express business handled between points in Minnesota by defendant during 1899. The amount of back taxes on these earnings is $434.75.

The trial court decided for the state, holding that the earnings embraced in each of the four classes were taxable, and that plaintiff was entitled to judgment for $9,719.66, the full amount claimed. Judgment was entered, and defendant appealed.

We will consider the different classes of earnings separately in the order above stated.

1. Defendant claims that a tax upon these earnings is a tax upon interstate commerce. We think that the case of Lehigh Valley R. Co. v. Pennsylvania, 145 U. S. 192, 12 Sup. Ct. 806, 36 L. ed. 672, is decisive against defendant's contention, at least as to the proportion of the earnings derived from the carriage within this

state. The facts in that case are substantially identical with the facts in this. As here, the point of shipment and the point of destination were both within the state; but the route passed through a portion of another state. It was held that this was not interstate commerce, and that the state of the points of shipment and destination could tax earnings on such shipments. It perhaps does not appear as clearly as it might whether the recovery in that case was allowed for the entire earnings, or for a proportion thereof based upon the mileage within the state; but we interpret the decision as allowing a recovery of taxes upon that proportion of the earnings derived from the carriage wholly within the state. This seems to us the safer rule, and avoids any question of taxing interstate commerce, and we adopt and apply it to this case. Nine per cent. of the taxes recovered on this class of earnings should be deducted from the amount of the recovery.

Defendant also contends that the language of the statute shows it was not the intention of the legislature to tax such earnings. This contention is based upon the wording of the provisions that the gross receipts "for business done within this state" shall be returned by the company, and that the tax shall be assessed upon its "gross receipts for business done between points within this state." The intent of the legislature was clearly to avoid taxing interstate business; but we are unable to see how confining the tax to receipts from business done "between points within this state" indicates an intention to exclude from taxation, or, more correctly speaking, to exclude from the measure of taxation, earnings "between points within this state" in cases where the shipments pass out of the state en route. To so construe the language would be to add a new term to the act.

2. So-called "interstate transfer" business. Carriage of shipments from points in this state to points without this state is undoubtedly interstate commerce, though the carriage without the state is wholly by connecting companies. There is no doubt that it was the intention of the legislature, as expressed in the act, to include this class of earnings within the state in the gross receipts upon which the tax is based. They are earnings from business done

"between points within this state." The provision that there shall be included by the company in its return "its proportion of gross receipts for business done by such company within this state in connection with other companies" is not, we think, entirely colorless, but bears out the conclusion that the act shows an intent that the state shall be entitled to include such earnings in figuring the taxes to be paid by the company.

The question is whether the legislature had power to include earnings from such shipments. If the gross earnings tax law is to be construed as a tax upon gross earnings, admittedly a tax upon the earnings from interstate shipments is an interference with interstate commerce; but if such law does not authorize a tax upon gross earnings, if it is a tax upon the property of the corporation within the state, its gross earnings within the state being merely a measure or method of arriving at the value of its property for taxation, it is equally clear that there is no interference with interstate commerce, and the legislature has not acted beyond its power.

There is nothing in the constitution or laws of the United States which forbids the state to tax property which is within its borders merely because it is employed in interstate or foreign commerce. State v. Northwestern Tel. Exch. Co., 107 Minn. 390, 120 N. W. 534; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. ed. 613.

It has long been settled by the decisions of this court that the gross earnings tax laws were not intended to change the character of the tax, but for the purpose of certainty were intended to change the method of computation. The amount required to be paid remains a tax upon the property, and not against the corporation. The gross earnings tax is a system by which the amount of tax upon the property is determined. City of St. Paul v. St. Paul & S. C. R. Co., 23 Minn. 469; County of Ramsey v. Chicago, M. & St. P. Ry. Co., 33 Minn. 537, 24 N. W. 313; County of Todd v. St. Paul, M. & M. Ry. Co., 38 Minn. 163, 36 N. W. 109; County of Traverse v. St. Paul, M. & M. Ry. Co., 73 Minn. 417, 76 N. W. 217; Minneapolis & St. L. R. Co. v. Koerner, 85 Minn. 149, 88 N. W. 430; State v. Canda Cattle Car Co., 85 Minn. 457, 89

N. W. 66; State v. Northwestern Tel. Exch. Co., 107 Minn. 390, 120 N. W. 534.

It is true that this court has never construed this particular law; but we are not able to see why the decisions on the railroad tax laws and on the telephone tax law should not rule this case. It is pointed out that the title to the act used the expression "Taxation of Express Companies," and that the Revised Laws uses the term "Tax upon Its Gross Receipts," though this latter language was not in the act itself. But what the tax is called is not material. The act for this tax was passed on the same day and pursuant to the same constitutional amendment as the law providing for a gross earnings tax upon telephone companies, which was construed to be a property tax. It is quite clearly a part of the same general scheme of taxation—the system of using gross earnings as a method of arriving at the amount of the tax upon the property. The gross earnings system, as applied to railroads, had been in force many years at the time this constitutional amendment was adopted, and when the laws were passed applying the system to telephone and express companies. The railroad tax laws had received the construction of the courts that the tax was not upon gross earnings, but on property. It seems fair to assume that the legislature had this construction in view, and did not intend to tax the gross earnings of express companies, but did intend to extend a system of taxation that had proven satisfactory.

The decisions of this court, if followed, lead clearly to the conclusion that the law in question provides for a property tax, and is not, therefore, a tax upon interstate commerce when applied to the receipts for business within the state, though the shipments come from or go to a point outside the state. We do not feel justified in departing from the doctrine of these decisions because of the recent decisions of the United States supreme court relied on by defendant. It is by no means clear that the court has rendered any decision on the subject that is contrary to those of this court.

The earlier cases established the principle that a tax upon the earnings from interstate commerce is an interference with such commerce, but do not hold that a gross earnings system of taxation

cannot be construed as a tax upon property. Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. ed. 158; Philadelphia & Southern S. Co. v. Pennsylvania, 122 U. S. 326, 7 Sup. Ct. 1118, 30 L. ed. 1200; Ratterman v. Western Union Tel. Co., 127 U. S. 411, 8 Sup. Ct. 1127, 32 L. ed. 229; Western Union Co. v. Alabama S. B. of A., 132 U. S. 472, 10 Sup. Ct. 161, 33 L. ed. 409. In Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. ed. 613, it was held that a tax upon the capital stock of the Pullman Company, on a basis of assessing such proportion of the capital stock of the company as the number of miles over which it ran cars within the state bore to the whole number of miles in that and other states over which its cars were run, was, in substance and effect, a tax upon property. In Maine v. Grand Trunk Ry. Co., 142 U. S. 217, 12 Sup. Ct. 121, 163, 35 L. ed. 994, the state statute required railroad companies to pay an annual tax for the privilege of exercising their franchise in the state, the amount to be determined by the amount of their gross receipts. It was provided that, where a railroad lay partly within and partly without the state, the tax should be equal to the proportion of its gross receipts within the state; its amount to be determined by dividing the gross receipts of the company by the total number of miles operated, thus ascertaining the average gross receipts per mile, and then multiplying the result by the number of miles operated within the state. It was held that this was not a tax upon gross receipts, but resort to the receipts was to obtain a guide to a reasonable conclusion as to the amount of the excise tax which should be levied. The law was held not to be a regulation of interstate commerce.

Statutes applying similar methods of taxation to telegraph companies and to express companies have been sustained, as essentially property taxes, and not an interference with interstate commerce. Western Union Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. ed. 49; Adams Express Co. v. Ohio State Auditor, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. ed. 683. In McHenry v. Alford, 168 U. S. 651, 18 Sup. Ct. 242, 42 L. ed. 614, where the court had under consideration a railroad gross earnings tax law of the territory of

114 M.—23.

Dakota, though the question of interference with interstate commerce was not decided, Mr. Justice Peckham clearly intimates that the act was not a tax upon gross earnings, but provided a different method of taxation upon the property of the company. His language is in point (p. 671): "When it is said, as it is in this act, that the tax collected by this method shall be in lieu of all other taxes whatever, it would seem that it might be claimed with great plausibility that a tax levied under such circumstances and by such methods was not in reality a tax upon the gross earnings, but was a tax upon the lands and other property of the company, and that the method adopted of arriving at the sum which the company should pay as taxes upon its property was by taking a percentage of its gross earnings."

In Galveston, Harrisburg & S. A. Ry. Co. v. Texas, 210 U. S. 217, 28 Sup. Ct. 638, 52 L. ed. 1031, a gross earnings tax law of Texas was held to violate the commerce clause of the constitution. The majority of the court, speaking through Mr. Justice Holmes, while expressly stating that "by whatever name the exaction may be called, if it amounts to no more than the ordinary tax upon property or its just equivalent therefor * * * it is not open to attack as inconsistent with the constitution," holds that the act there in question was not a property tax, but a direct tax on gross receipts. Philadelphia & Southern Mail S. S. Co. v. Pennsylvania, is followed, and Maine v. Grand Trunk Ry. Co. distinguished. The Galveston case is really the only utterance of the United States supreme court that appears at all inconsistent with the cases in this court holding that the gross earnings tax is a tax upon property, and even here the doctrine is fully recognized that some gross earnings tax laws should be so construed. The act under consideration in the case at bar is, we think, fairly distinguishable from the act considered in the Galveston case. Our constitution, under which the act was passed, authorizes the imposition of a tax "upon the property within the state" of express companies, by taxing the gross earnings. The act provides that the tax "shall be in lieu of all other taxes upon the property of any express company * * * paying the same."

Giving due weight to the cases of the supreme court referred to and others we have not referred to, taking into consideration the language of the constitutional amendment and of the act itself, viewed in the light of the construction that had been placed upon the railroad tax laws before this act was passed, we feel that no other course is open but to adhere to our former decisions.

3. Receipts from money orders sold by defendant at points in Minnesota. This item is divided into earnings on money orders redeemed without the state and those redeemed within the state. It cannot be seriously claimed, and we do not understand defendant to claim, that taxation of these earnings violates the commerce clause of the constitution. Nathan v. State, 8 How. 73, 12 L. ed. 992. The fees for all money orders issued within the state are paid in this state. The orders are redeemable at any office of the company within or without the state. No transportation of money is involved. As far as the validity of the tax is concerned, there seems to be no material distinction between the orders that are redeemable within Minnesota and those redeemed elsewhere. The company is engaged in a banking business in the state, the earnings from which are not taxed at all unless under this act.

It is argued by defendant that, to the extent that defendant is engaged in business other than the express forwarding business, it cannot be regarded as an express company within the meaning of the statute. The statute defines an express company as a corporation that is engaged in the business of conveying articles by express; but it by no means follows that a corporation that is also engaged in other business is not still an express company, and liable to pay taxes on the property used in such other business. It was and is a well-known fact that express companies sell and redeem money orders. Defendant's charter authorized it to do a banking and exchange business. No reason is apparent why the legislature should exempt from taxation the property employed in such business. The statute does not confine the tax to earnings from transportation. It says that the company shall return a statement of its "entire receipts * * * for business done within this state;" that the auditor shall determine the "gross receipts of every such company," and shall

assess a tax upon its gross receipts for business done between points within this state. We think that the selling of money orders within the state is business done within the state, within the fair meaning of the language of the act.

The point is made that taxing these receipts violates the provisions of the federal constitution and the state constitution requiring that taxes must be uniform and levied without discrimination and guaranteeing the equal protection of the laws and due process of law. The argument is that the classification is unreasonable and arbitrary, in that the receipts from similar business carried on by others than express companies are not taxed. We are not willing to grant the truth of the premise. It is true that receipts from the sale of exchange by banks are not taxed directly, but the system of taxation applied to banks is not the gross earnings system, and it is not right to say that a bank pays no tax on the receipts from its exchange business, or upon the property used in that business. Defendant points out the similarity in this respect between this case and the corporation tax case decided by the supreme court of the United States, since its brief and argument in this case were made. As that decision upholds the validity of the corporation tax law, it is needless to discuss further the constitutional objections urged here by defendant. We hold that the state was entitled to assess a tax upon the receipts from defendant's sale of money orders within the state.

4. Miscellaneous items of earnings in 1899, not reported for taxation. The only point urged here is that the statute of limitations bars a recovery of these items. This point applies also to the taxes for 1899 included in the previously considered items. The act provided that the auditor shall make the assessment on or before March 15 of each year upon the gross receipts for the preceding year, and shall deliver to the state treasurer for collection a draft upon the company for the amount assessed. The company has sixty days after demand by the state treasurer in which to pay the tax before any penalty accrues. It is clear in our opinion that no cause of action accrued to recover these taxes until sixty days after demand by the state treasurer, which would be May 1, 1900, at the earliest.

State v. Sage, 75 Minn. 448, 78 N. W. 14; R. L. 1905, § 4071. At this time the limitation was six years, but before this six years expired, on March 1, 1906, the Revised Laws of 1905 went into effect. Section 980 of the Revised Laws abrogated the statute of limitations as to the right of the state to enforce the assessment and collection of taxes upon all property subject to taxation.

Defendant argues that section 980 is merely a re-enactment of section 82, c. 2, Laws 1902, which, according to the title of the chapter, concerned only the taxation of real estate; but the title was omitted, and the body of section 82 incorporated in the revision as a general provision, under chapter 11, entitled "Taxes." Section 980 is not now subject to the limitations in the original title to chapter 2. State v. Barnes, 108 Minn. 230, 122 N. W. 11. Defendant's contention that section 980 relates only to the assessment of taxes upon property as such, and not to a tax based upon gross earnings, is not substantiated by the language of that section, which is clearly broad enough in its terms to include all taxes due the state. As we have held in this and in many other cases, a gross earnings tax is a tax upon property. We hold that section 980 does apply to gross earnings taxes, and that there is no limitation of time upon the right of the state to enforce collection of such taxes.

5. Defendant makes the further point that none of the omitted earnings can now be taxed, or the taxes now collected, for the reason that no provision is made in the laws for making a reassessment or a subsequent assessment on omitted earnings. It would be manifestly wrong if this power did not exist, and we are of the opinion that it does. Section 1585, R. L. 1905. The cases of State v. Minnesota & Int. Ry. Co., 106 Minn. 176, 118 N. W. 679, 1007, and State v. N. W. Tel. Exch. Co., 107 Minn. 390, 120 N. W. 534, were brought to recover taxes on omitted gross earnings for prior years, and proceeded to final judgment on the theory that such taxes could be recovered, though it is true that the point made by defendant in this case was not raised in either of the cases cited. We hold that the state may recover taxes on earnings for prior years not reported by the company.

Our conclusion on the whole case is in accord with that reached

by the trial court, except as to nine per cent. of the taxes under the first item. We hold that nine per cent. of the taxes assessed on earnings on this class of business should be deducted from the judgment.

Remanded, with directions to modify the judgment in accordance with this opinion.