WELLS FARGO & CO. v. JOHNSON, Treasurer of State of South Dakota.

FARGO v. SAME.

(Circuit Court of Appeals, Eighth Circuit. April 24, 1914.)

Nos. 4039, 4040.

*(Syllabus by the Court.)*

1. TAXATION (§ 40*)—VALIDITY—UNIFORMITY.

In 1910 the Constitution of South Dakota provided that "all taxation shall be equal and uniform," that "all taxes to be raised in this state shall be uniform on all real and personal property according to its value in money to be ascertained by such rules of appraisement and assessment as may be prescribed by the Legislature by general law, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property. And the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying taxes on individual property." While the property of individuals and of the great majority of the taxpayers in the state was assessed according to its actual value in money, without considering the earnings of its respective owners, and taxes were levied at a uniform rate on all assessments, the Legislature required the State Board of Assessment and Equalization, in making the assessments upon the property of each express company doing business in that state, to "take into consideration the gross earnings of said company within the state for the year ending on the 30th day of April preceding" (Laws of South Dakota 1907, c. 64, § 17), and the board did so and measured the assessments of the property of such companies by the companies' earnings far more than by other matters considered.

*Held*, the provision of section 17 quoted violated the provisions of the Constitution quoted, and the assessments of the property of the express companies were void.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 68–89; Dec. Dig. § 40.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. COURTS (§ 92*)—OPINIONS—DICTA.
   "General expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

   [Ed. Note.—For other cases, see Courts, Cent. Dig. § 335; Dec. Dig. § 92.*]

3. TAXATION (§ 608*)—INJUNCTION—GROUNDS.
   Systematic, repeated, continuing violations of the Constitution or the law in the making of assessments and the levying of taxes, like continuing trespasses, justify an injunction against the continuance of such a course and the collection of taxes so levied.

   [Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241; Dec. Dig. § 608.*]

Appeal from the District Court of the United States for the District of South Dakota; Jas. D. Elliott, Judge.

Complaints by Wells Fargo & Co. and by James C. Fargo, individually and as president of the American Express Company, to enjoin George G. Johnson, as Treasurer of the State of South Dakota, from collecting certain taxes. From decrees dismissing the complaints (205 Fed. 60), plaintiffs appeal. Reversed and remanded, with directions.

C. O. Bailey, of Sioux Falls, S. D. (Bailey & Voorhees, of Sioux Falls, S. D., and Joseph W. Welsh and Charles W. Stockton, both of New York City, on the briefs), for appellants.

Royal C. Johnson, Atty. Gen., of South Dakota, and L. T. Boucher, of Aberdeen, S. D., for appellee.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

SANBORN, Circuit Judge. These are appeals from decrees which dismissed complaints to enjoin the treasurer of South Dakota from collecting taxes levied against the plaintiffs by the state board of assessment and equalization of the state of South Dakota in the year 1910. The plaintiffs are express companies, and they claim that the assessments of their property made by the board in 1909 and 1910, on which it levied the taxes in those years, were made in violation of the Constitution of the state of South Dakota, in that in making them it took into consideration their earnings in the state while the earnings of the great majority of the taxpayers of the state were not considered in assessing their property for taxation, that these assessments were made in violation of the statutes of that state, in that the board based them on a certain percentage of the respective amounts the plaintiffs paid to the railroad companies for transportation services in South Dakota, instead of founding them on the values of their personal and real properties, and for other reasons. They brought suits on these grounds to enjoin the collection of the taxes in 1909 against them. Those suits were heard and decided in their favor by Judge Willard, and decrees for injunctions were rendered, from which no appeals were ever taken. Before the decision of those cases was made the board had made the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

assessments of 1910, which the court below has sustained in these cases, and that ruling is assigned as error. These cases were heard together, and whatever is said concerning one of them in this opinion which is not clearly applicable to that one alone is equally applicable to the other.

[1] The Constitution of South Dakota in force in 1909 and 1910 provides in article 6, § 17, that "all taxation shall be equal and uniform," and in article 2, § 2, that:

"All taxes to be raised in this state shall be uniform on all real and personal property, according to its value in money, to be ascertained by such rules of appraisement and assessment as may be prescribed by the Legislature by general law; so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying of taxes on individual property."

Section 17 of chapter 64 of the Laws of South Dakota 1907, which was in force in 1909 and 1910, provides that the board shall:

"On the first Monday in July each year assess all the property of every express and sleeping car company doing business in this state and used in the operation and maintenance of its business, and in doing so shall take into consideration the gross earnings of said company within the state for the year ending on the thirtieth day of April preceding the statements made by said companies and by the board of railway commissioners and any and all other matters necessary to enable them to make a just and equitable assessment of said property in the same ratio as the property of individuals."

And that:

"Said board shall levy a tax upon said property, which tax shall be equal to the average amount of state, county, school, municipal, road, bridge and other local taxes levied upon other property for the preceding year."

Section 16 of the act provided that every express company doing business within the state must transmit to the state auditor, on or before July in each year, a statement of the gross earnings of the total business of the company transacted in the state for the year ending April 30th preceding, and of the value of its office furniture, fixtures, and real estate within the state. Wells Fargo & Co. made a statement to the auditor in June, 1910, that its gross earnings within the state for the year ending April 30, 1910, were $131,096.28, and that the value of its office furniture, fixtures, and real estate was $18,473.98. The board assessed the value of its property $289,877, and assessed a tax of 28 mills on the dollar upon it, which made its tax $8,116.65. The American Express Company made a similar report, and received a similar assessment. It is admitted in the answer, and the testimony for the defendant was, that in making these assessments of the plaintiff's property the board considered, among other things, the earnings of and the business done by the companies in the state of South Dakota, and defendant's counsel in their brief in this court say:

"As has been said, the board of assessment of South Dakota did consider, among other things, the income of appellant, so far as they could ascertain it, the contracts of appellant with the railway companies, the uses to which its property was put, and the intangible, as well as the tangible, assets in this state, in fixing this valuation. If this was wrong, then the tax must fall; but we contend it was not wrong."

It is conceded that the board was without either constitutional or statutory authority to tax either the gross or net earnings of the company in the state of South Dakota in lieu of all other taxes or of taxes on its property, and that the limit of its lawful power was to assess and tax its "real and personal property according to its value in money, * * * so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property," as the Constitution requires. The value of real and personal property in money is the amount that can be realized from it by a sale of it within a reasonable time, and that is the valuation at which the local assessors were required to assess, and presumptively did assess, the property of individuals and of the vast majority of the taxpayers in the state of South Dakota. Counsel argue that the assessors of such property are not prohibited from considering the earning power of that property for the purpose of ascertaining its actual value. But this contention is fallacious and irrelevant in this case. In the first place, while such assessors may and doubtless do consider the rental value, and in that sense the earning power, of some kinds of real and personal property, it is common knowledge that the customary and lawful measure of the value of such property which they use is the selling value of the property; and, in the second place, it was not the earning power of plaintiffs' property in South Dakota that the board considered as a measure of its value, but the earnings of the plaintiffs themselves, the earnings of the owners of the property.

The first question in this case, therefore, is whether or not taxation at a uniform rate, at the rate of 28 mills on the dollar in this case, of the real and personal property of one taxpayer on a valuation measured by its selling value in money and of the real and personal property of another taxpayer on a valuation measured by the earnings of the owner of the property, as well as by its selling value, is equal and uniform taxation of the real and personal property of both, so that each "person and corporation shall pay a tax in proportion to the value of his, her or its property," as the Constitution requires. This question seems susceptible of but one answer; it seems impossible that such assessments could produce equal and uniform taxation according to the value in money of the property assessed. Counsel for the defendant, however, invoke the familiar rule that the national courts follow the settled construction by the highest judicial tribunal of a state of its Constitution and laws where no question of general or commercial law or of the Constitution or laws of the United States is involved, and insist that the Supreme Court of South Dakota decided, in State ex rel. American Express Co. v. State Board of Assessment and Equalization, 3 S. D. 338, 53 N. W. 192, that a statute which authorized the board to consider the gross earnings of a corporation in making the assessment of its property did not violate the Constitution of that state. The opinion in that case has been carefully and repeatedly read and searched in vain for any presentation, discussion, reference to, or decision of the question whether or not a statute which required the board to take into consideration the gross earnings of one class of taxpayers in assessing their real and personal property for taxation, while the assessors of the property of other classes were not required to and did not take their

earnings into consideration in assessing their property, was violative
of the provisions of the Constitution which have been cited. The only
constitutional question mentioned in that opinion is whether or not the
taking into consideration by the board of the contracts of the express
company with the railroads, which related to transportation to and
from some places without as well as those within the state, was an in-
vasion of the right to conduct interstate commerce, and therefore a vio-
lation of the Constitution of the United States. 3 S. D. 350, 53 N. W.
192.

[2] It is true that the court considered and decided that the board
did· not violate the statute under consideration in that case by taking
into consideration in making its assessment the gross earnings of the
express company (3 S. D. 347, 53 N. W. 192), which by its terms that
statute expressly authorized the board to consider, as does the statute
now in hand, but the position was nowhere taken, discussed, considered,
or decided that the statutory grant of this authority to the board was
in violation of the Constitution of the state. The result is that the
decision of this question may not be lawfully avoided by this court on
the ground that the highest judicial tribunal of the state has settled it,
and the authoritative words of Chief Justice Marshall govern here:

"General expressions in every opinion are to be taken in connection with
the case in which those expressions are used. If they go beyond the case
they may be respected, but ought not to control the judgment in a subsequent
suit when the very point is presented for decision." Cohens v. Virginia, 6
Wheat. 264, 293, 5 L. Ed. 257; King v. Pomeroy, 121 Fed. 287, 294, 58 C. C. A.
209, 216; Traer v. Fowler, 144 Fed. 810, 817, 75 C. C. A. 540, 547; Mason City
& Ft. Dodge Ry. Co. v. Wolf, 148 Fed. 961, 968, 78 C. C. A. 589, 596; Evans v.
Victor, 204 Fed. 361, 367, 122 C. C. A. 531, 537.

An attempt is also made to sustain the constitutionality of this stat-
ute and the validity of the assessments of the plaintiffs' property un-
der it by the decisions in State v. United States Express Co., 114 Minn.
346, 131 N. W. 489, 37 L. R. A. (N. S.) 1127; United States Express
Co. v. Minnesota, 223 U. S. 335, 348, 32 Sup. Ct. 211, 56 L. Ed. 459,
and Postal Telegraph Cable Co. v. Adams, 155 U. S. 688–697, 15
Sup. Ct. 360, 39 L. Ed. 311. But the Constitution of Minnesota ex-
pressly authorized the Legislature of that state to impose a tax upon
the gross earnings of express companies (article 9, § 17), and it con-
tained no such requirements or restrictions as those that have been
cited from the Constitution of South Dakota. The Legislature of
Minnesota, under the Constitution of· that state, passed an act provid-
ing for a 6 per cent. tax on the gross earnings in Minnesota of express
companies in lieu of all other taxes. Revised Laws Minnesota 1905,
§§ 1013, 1019. The state sued the express company to recover this 6
per cent. of certain earnings which the express company had derived
from business which that company claimed constituted interstate com-
merce, and hence was exempt from taxation by the state under the com-
mercial clause of the Constitution of the United States. The Supreme
Court of Minnesota, in the case first cited above, adjudged this claim,
and held that a part of these earnings were, and a part were not, exempt
from taxation by the state under the Constitution of the United States.
114 Minn. 346, 131 N. W. 490, 37 L. R. A. (N. S.) 1127. In the dis-
cussion of this question the court reaffirmed its previous decisions that

these taxes on gross earnings of corporations in lieu of all other taxes pursuant to the express authority of the Constitution of Minnesota were in reality taxes on the property of the corporation measured by their gross earnings. 114 Minn. 346, 131 N. W. 491, 492, 37 L. R. A. (N. S.) 1127. When this case reached the Supreme Court, the only question it presented there was whether or not any of the gross earnings upon which the Minnesota court had sustained the tax were exempt from taxation under the commercial clause of the Constitution of the United States, and that court held that they were not. 223 U. S. 347, 348, 32 Sup. Ct. 211, 56 L. Ed. 459. In the course of its opinion the Supreme Court of the United States recited the fact that the Minnesota court had construed the tax to be a tax upon the property of the company measured by its gross earnings within the state, and remarked that it was not prepared to say that this conclusion was not well founded in view of the provisions and purposes of the law.

In Postal Telegraph Cable Co. v. Adams, 155 U. S. 688, 696, 15 Sup. Ct. 268, 360, 39 L. Ed. 311, the only question before the court was whether or not a tax levied by the state of Mississippi was violative of the commercial clause of the Constitution of the United States, and upon that issue alone are the remarks of the court either authoritative or material. Thus it appears from a review and analysis of these decisions upon which defendant's counsel seem to rely: (1) That the only question at issue or decided in any of them was whether or not certain taxes were levied in violation of the commercial clause of the Constitution of the United States; (2) that the construction in the Minnesota case that a tax on the gross earnings in a state of a corporation is a tax on its property therein, measured by the gross earnings, was based on express authority in the Constitution of that state to tax the gross earnings, and on the fact that such tax was levied in lieu of all other taxes on its property; and (3) that there is nothing in the adjudications or opinions in these cases to the effect that, in the absence of express authority in the Constitution of a state to levy taxes on the gross earnings of a corporation, and in the face of positive declarations therein that all taxes "shall be equal and uniform," that "all taxes raised in this state shall be uniform on all real and personal property according to its value in money * * * so that every person and corporation shall pay a tax in proportion to the value of his, her, or its property," and that "the Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying taxes on individual property," a statute which requires the taxation of the property of a corporation on an assessment of its property by the consideration of the gross earnings of the corporation in the state and the value of its property, while the property of the vast majority of the taxpayers of the state is taxed upon assessments measured by the actual value of their property without any consideration of the earnings of its owners, is not violative of these constitutional restrictions, or that an assessment made in accordance with such a statute is not void. And so the question recurs and demands its answer.

It is conceded that the people of a state may, by express provisions in its Constitution, authorize their legislative and executive officers to

measure the assessable value of the taxable property of a corporation by its gross earnings in the state. That is not the question which this case presents. The question here is, May such officers measure the assessable value of the real and personal property of the corporation by the earnings of that corporation in the state, or by a consideration of the earnings of the corporation without such constitutional authority, in defiance of the stringent and mandatory restrictions of the Constitution of South Dakota? In a simple case the answer seems not to be doubtful. If each of two individuals owns real and personal property of the same actual value and has gross earnings of $100,000 a year, and one of them is taxed on an assessment of his real and personal property, measured by its actual value in money without a consideration of his earnings, and the other on an assessment of his like property measured by his gross earnings and the actual value in money of his property, or if the value of the property of one is assessed without, and that of the other with, a consideration of his gross earnings, that taxation certainly cannot be equal and uniform; it cannot be such that each will pay a tax in proportion to the value of his property, for the consideration of the gross earnings is required by the South Dakota statute to have, and it unavoidably would have, an effect upon the assessment. If an individual and a corporation are in the same business, as commission merchants, grocers, wholesale dealers in dry goods, or as carriers, or in any other occupation, and the real and personal property of the former is assessed at its actual value in money measured by or with a consideration of his gross earnings, while the real and personal property of the latter is assessed at its value in money measured without regard to its gross earnings, those taxes must be other than uniform, so that every person and corporation shall pay a tax in proportion to the value of his, her of its property. Under the Constitution and laws of South Dakota the assessment of the property of individuals is required to be and is measured by its actual value in money without any consideration of the gross earnings of its respective owners. The Constitution commands that:

"The Legislature shall provide by general law for the assessing and levying of taxes on all corporation property, as near as may be, by the same methods as are provided for assessing and levying taxes on individual property."

Section 17 of chapter 64 of the Laws of South Dakota requires the assessment of the property of express companies to be, and in this case it has been, measured by its actual value in money with a consideration of the earnings of the company in that state, and no logical or lawful way of escape is perceived from the conclusion that this is not "as near as may be" the same method provided for the assessment of the property of individuals because an assessment of the property of these corporations at their actual value in money, without a consideration of their gross earnings, might have been prescribed and followed.

The Constitution requires taxation to be uniform "so that every person and corporation shall pay a tax in proportion to his, her, or its property." The assessment of the property of individuals is required to be and is measured by its actual value in money without consideration of the gross earnings of its respective owners. Section 17 of chapter 64 requires the assessment of the property of express com-

panies to be, and in this case it has been, measured by its actual value in money with a consideration of the earnings of the companies and a substantially uniform tax of 28 mills on the dollar has been levied upon these asesssments. Taxes so raised cannot be uniform so that every person and corporation shall pay a tax in proportion to his, her or its property, and no doubt remains that the portion of section 17 of chapter 64, which required the board to take into consideration the gross earnings of express companies within the state in making assessments of their property for taxation, violated the Constitution of South Dakota, nor that the assessments so made and the taxes levied upon them in 1910 were equally violative of that Constitution, unauthorized and void, and that must be the decree in this case.

There are other considerations that confirm our minds in this conclusion. The Constitution of South Dakota has been amended since 1910 so that it no longer requires that all taxes shall be "uniform on all real and personal property according to its true value in money" and so that it provides that "gross earnings and net income shall be considered in taxing corporations," amendments clearly not made without just reason.

There were five express companies doing business in South Dakota in 1909 and 1910 under contracts with railroad companies to pay to the latter from 45 per cent. to 55 per cent. of their gross earnings from the transportation of express business over their lines. As the amounts paid to the railroad companies by the respective express companies were approximately one-half of the amounts of their gross earnings from the transportation of the express business over these railroads in South Dakota, the amounts so paid furnished a ready measure of the gross earnings of the respective companies from their transportation business over these railroads. The amount paid to the railroad companies by Wells Fargo & Co. was $181,193.72, and its assessment was 1.59 of that amount or $289,877. The amount paid to the railroad companies by the American Express Company was $120,689.56, and its assessment was 1.60 of that amount or $193,260, and this although the value of the office furniture, fixtures and real estate of the former was reported to be $18,473.98 and the number of miles it operated in South Dakota 1,621, while the reported value of the office furniture, fixtures, and real estate of the latter was $9,151.73 and the number of miles operated by it in South Dakota 1,363. The amount paid the railroad companies by the United States Express Company was $6,812.22, and its assessment was 1.59 of that amount, or $10,899. The amount paid the railroad companies by the Western Express Company was $1,507.28, and its assessment was 1.51 of that amount or $2,262, and the amount paid the railroad companies by the Great Northern Express Company was $6,626.47, and its assessment was 1.71 of that amount, or $11,278. How comes it that the assessments of three of these companies who were doing the larger part of the express business in the state were the same percentage within 1 per cent. of the respective amounts they paid to the railroad companies? There is but one rational explanation of this fact, and that is that the board measured the assessments of these companies by the amounts these companies paid to the railroad companies, respectively, that is to say, by

their gross earnings from their transportation business over the railroads, on the theory that the amounts paid to the railroads were about 50 per cent. of their respective gross earnings. It is incredible that the board could have estimated or guessed at the value of the property of these companies in any other way so accurately that their estimates would come within $1/100^{th}$ of the same percentage of each of the respective amounts which the express companies paid to the railroad companies. There is, it is true, testimony in this record tending to show that in making these assessments the board considered not only: (1) The reports of the railroad companies which showed the amounts paid to them by the express companies and the reports of the express companies of their earnings; but also (2) the mileage of their respective systems; (3) the number of their respective offices in the state; (4) the values of their respective furnitures, fixtures, horses, wagons, and safes; and (5) of other things they could obtain relevant to the value of their respective properties. But the uniform relation of the assessments of the three principal companies mentioned to the respective amounts they paid to the railroad companies is more persuasive than the testimony of many witnesses that the effect upon the assessments of their property of the consideration of all things except the amounts paid by them to the railroad companies, was negligible, and that those amounts, taken as the representatives of one-half of the earnings of these express companies from their transportation business in the state, were the real measures of the assessments made upon their property by the board. And when to these compelling facts is added the consideration that there has already been an adjudication after full hearing on the merits that this board measured the assessments it made against these express companies in the preceding year by their earnings indicated by their payments to the railroad companies, no doubt remains that the assessments under consideration were measured by the earnings of the companies, and not by the value of their property in money, and the conclusion that they are unconstitutional and void becomes irresistible.

[3] Finally counsel for the defendant argue, as we understand their brief, that although the law under which the asesssments were made is unconstitutional and the assessments and taxes are void, still the plaintiffs are entitled to no injunction against their collection: (1) Because they failed to state in their reports to the board the value of all their property in the state, or used in the state as required by subdivision 5 of section 16 of chapter 64 of the Laws of South Dakota of 1907; but their failure so to do, if they so failed, and there is positive and persuasive testimony in the record that they did not, is not such iniquity as repels a plaintiff from the precincts of a court of equity. (2) Because neither mere illegality, nor irregularity, nor injustice is sufficient to sustain an injunction to restrain the collection of a tax; but these taxes are not irregular, or illegal, or unjust only. The record has convinced us that they are unjust, and excessive, that they are irregular and unlawful, but they are also unconstitutional and void, and their collection would constitute a taking of the property of the plaintiffs without due process of law, in violation of the national Constitution, and the action of the board in making the assessments and levying

the taxes was either a gross mistake equivalent to a fraud or an actual fraud, and mistake and fraud are immemorial grounds of equity jurisdiction. (3) Because the plaintiffs have an adequate remedy at law; but this is the second time this board has made in the same way unlawful assessments of the property of these plaintiffs which effect an unjust and unconstitutional discrimination in taxation against them and their property. Its action has been systematic and repeated, and a systematic, repeated, continuing violation of the Constitution or the law to the injury of a plaintiff, like a continuing trespass, presents ample reason for an injunction against its continuance. Atchison, Topeka & Santa Fé Ry. Co. v. Sullivan, 173 Fed. 456, 471, 97 C. C. A. 1; Cummings v. National Bank, 101 U. S. 153, 158, 25 L. Ed. 903; Raymond v. Chicago Traction Company, 207 U. S. 20, 36, 37, 28 Sup. Ct. 7, 52 L. Ed. 78, 12 Ann. Cas. 757; Railroad & Telephone Companies v. State Board of Equalizers (C. C.) 85 Fed. 302, 307, 318; Fargo v. Hart, 193 U. S. 490, 503, 24 Sup. Ct. 498, 48 L. Ed. 761; Reagan v. Farmers' Loan & Trust Company, 154 U. S. 362, 391, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Nashville, C. & St. L. Ry. v. Taylor (C. C.) 86 Fed. 168, 184; Louisville Trust Company v. Stone, 107 Fed. 305, 46 C. C. A. 299. (4) Because the plaintiffs have an adequate remedy at law; but the plaintiffs now have and are entitled, as against these unconstitutional taxes, to the right to keep the amount required to pay them. The rights of the parties have been litigated and determined. The only remedy at law the plaintiffs have is either to defend against a proceeding to collect the taxes on the same grounds which have been presented and sustained in these suits, or to pay the amounts of these taxes under protest, and bring actions at law to recover them back. Neither of these remedies is as prompt, as certain, or as complete as the immediate decree of this court and its injunction to which the plaintiffs have established their right in this litigation.

The decrees below must be reversed, and the cases must be remanded to the court below, with instructions to render decrees for the plaintiffs in accordance with the views expressed in this opinion.